UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:25-CV-00313-GNS

JAYSON POLLARD et al.                                                      PLAINTIFFS

v.

NICHOLAS BARNES et al.                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (DN 9).  The motion is ripe for adjudication.

## I.        STATEMENT OF FACTS AND CLAIMS

This case involves the search and seizure of a vehicle.  Tonya Board ("Board") parked her vehicle, a 2008 Ford Fusion ("the Ford"), at the top of the driveway near the house where Board lived with her son, Jayson Pollard ("Pollard").  (Compl. ¶¶ 3-4, 17-19, 25, DN 1-1).  The top of the driveway was partially enclosed by a tall wooden fence.  (Compl. ¶ 20).  On or about May 6, 2024, Pollard placed school supplies and other personal items in the Ford.  (Compl. ¶ 25).  While Pollard was walking away from the vehicle, four unknown Louisville Metro Police Department ("LMPD") officers ("the Unknown Officers") entered the backyard of the house and surrounded Pollard.  (Compl. ¶ 27).  After the Unknown Officers ordered Pollard to "stay put" and show them identification, Pollard complied, and the Unknown Officers searched and interrogated him. (Compl. ¶¶ 27, 30-32).  The Unknown Officers then searched the Ford before having it towed to the LMPD impound lot over Board's protests.  (Compl. ¶¶ 38-39).  Pollard was not permitted to retrieve his personal belongings from the Ford before it was towed.  (Compl. ¶ 37).  LMPD Detective Nicholas Barnes ("Barnes") obtained a search warrant for the Ford and searched in while

1

it was in the impound lot.  (Compl. ¶ 41; Defs.' Mot. Dismiss Ex. 1, at 1-9, DN 9-2).  The next day, Board paid $190 to have the Ford released.  (Compl. ¶ 48).

Plaintiffs assert that the searches and seizure were unlawful and that LMPD lacked probable cause.  (Compl. ¶¶ 63, 67).  Additionally, Plaintiffs allege that Pollard was "stopped because he is an African American."  (Compl. ¶ 56).  Plaintiffs filed a civilian complaint with LMPD against the Unknown Officers and Barnes.  (Compl. ¶ 43).  LMPD has since refused to provide Plaintiffs with a copy of that complaint and the names and badge numbers of the Unknown Officers.  (Compl. ¶¶ 45-46).  Plaintiffs filed suit in state court, and Defendants removed to federal court.  (Compl.; Notice Removal, DN 1).  Plaintiffs bring multiple federal and state law claims against Barnes, the Unknown Officers, LMPD's then-Chief Jacquelyn Gwinn-Villaroel ("Gwinn-Villaroel"), and the Louisville-Jefferson County Metro Government ("Louisville Metro").  (Compl. ¶¶ 6, 9-13, 92-185).

## II.    JURISDICTION

The Court has jurisdiction over this matter because it presents a federal question.  *See* 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the pendent state-law claims.  *See* 28 U.S.C. § 1367.

## III.    STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P 12(b)(6).  When considering a motion to dismiss, "courts must accept as true all material allegations of the complaint[] and must construe the complaint in favor of the complaining party."  *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) (citation omitted).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff

2

must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

## IV.    DISCUSSION

### A.    Lawfulness of Searches and Seizure

Defendants argue that all claims should be dismissed because the search and seizure of Board's vehicle was lawful.[1]

#### 1.    *Search Pursuant to a Warrant*

Defendants argue that the search and seizure of Board's vehicle, along with Pollard's personal property, was justified by a warrant. (Defs.' Mot. Dismiss 7-8, DN 9). "The Fourth Amendment requires that a search warrant issue only upon a finding of probable cause, which is defined as a fair probability that contraband or evidence of a crime will be found in a particular place." *Noel v. Carlson*, No. 13-CV-10533, 2014 WL 919333, at *3 (E.D. Mich. Mar. 10, 2014) (internal quotation marks omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "If a

---

[1] Even if this were true, this would not require dismissal of *all* claims. Count IV appears to allege an unlawful search of Pollard himself, rather than the vehicle. (Compl. ¶¶ 107-112). Defendants do not address this distinction.

court determines that sufficient probable cause existed for a search warrant to issue, no Fourth Amendment violation would be present." *Lundeen v. Toole*, No. 1:12CV3111, 2013 WL 6731774, at *8 (N.D. Ohio Dec. 19, 2013) (citing *Mays v. City of Dayton*, 134 F.3d 809, 813 (6th Cir. 1998)).

Defendants attached a warrant to their motion to dismiss. As a threshold matter, generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). There are, however, a few exceptions. Without converting the motion, a court may consider: (1) documents that are referenced in the complaint and central to the plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015). When considering public records, such as a warrant, a court may "conclude only that the record exists; . . . [the court may not] treat all information in the record as true." *Blackwell v. Nocerini*, 123 F.4th 479, 487 (6th Cir. 2024) (citing *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)); *see Collier v. Mastoridis*, No. 1:24-CV-189, 2025 WL 1208933, at *3 (E.D. Tenn. Apr. 25, 2025) (holding that the court may consider the existence of a warrant pursuant to the public record exception). Thus, the Court acknowledges that Barnes obtained a warrant to search Board's vehicle in the impound lot, but it does not accept any assertions made to obtain the warrant as true.

Plaintiffs allege that Barnes lacked probable cause to search of the vehicle after it was impounded. The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Applying these principles in the context of a [Section] 1983 claim, a Plaintiff does not satisfy Federal Rule of Civil Procedure 8 by making an unsupported assertion that probable cause is lacking." *Rogers v. Blickensdorf*, No.

14-CV-13192, 2015 WL 5215973, at *2 (E.D. Mich. Aug. 31, 2015) (citation omitted), *aff'd* (Jan. 20, 2016).  Thus, because Plaintiffs have not sufficiently alleged facts demonstrating a lack of probable cause and do not challenge the validity of the warrant, Plaintiffs have failed to state a claim upon which relief can be granted regarding the search of the vehicle in the impound lot pursuant to the warrant.  Any claim relating to that post-impoundment search is dismissed.

### 2.    *Warrantless Search and Seizure*

Plaintiffs' claims also rest on the unlawful searches and seizure of the vehicle at Plaintiffs' home pre-impoundment, which were not conducted pursuant to a warrant.  "Warrantless searches violate the Fourth Amendment's guarantee against unreasonable searches and seizures, with 'only a few specifically established and well-delineated exceptions.'"  *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  Two of these exceptions are the automobile exception and the plain view doctrine.  *See California v. Carney*, 471 U.S. 386, 390 (1985); *Horton v. California*, 496 U.S. 128, 133 (1990).

First, under the automobile exception, police can search a vehicle if it is "readily mobile and probable cause exists to believe it contains contraband . . . ."  *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam) (citing *Carney*, 471 U.S. at 393); *Hernandez v. Boles*, 949 F.3d 251, 259 (6th Cir. 2020).  The automobile exception, however, does not permit an officer to enter the curtilage of a home without a warrant to a search a vehicle.  *Collins v. Virginia*, 584 U.S. 586, 594, 601 (2018) ("[T]he scope of the automobile exception extends no further than the automobile itself.").  Curtilage—the area "immediately surrounding and associated with the home"—is regarded as "part of the home itself for Fourth Amendment purposes."  *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)).  Accordingly, "[w]hen a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within

the meaning of the Fourth Amendment has occurred." *Collins*, 584 U.S. at 593 (citing *Jardines*, 569 U.S. at 11).

Second, for the plain view doctrine to apply, four elements must be satisfied: "(1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object." *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007) (citations omitted). "A plain-view seizure thus cannot be justified if it is effectuated 'by unlawful trespass.'" *Collins*, 584 U.S. at 595 (quoting *Soldal v. Cook Cnty.*, 506 U.S. 56, 66 (1992)).

Plaintiffs' allegation of an unlawful search and seizure is plausible on its face. Because the vehicle was parked in the partially enclosed driveway next to Plaintiffs' house, it is plausible that the officers were within the curtilage of the home when they searched and seized the vehicle. If the officers were in the curtilage, the automobile exception would not apply, rendering the officers' actions unlawful. *See Collins*, 584 U.S. at 593-94. Additionally, Defendants did not argue that the plain view doctrine justified their actions until their reply, after the Plaintiffs mentioned the doctrine in their response—Defendants' motion to dismiss does not mention the words "plain view." In any event, more facts would be necessary to determine whether the vehicle was in the plain view of the officers; the Complaint, understandably, does not contain factual allegations necessary to establish the elements of the plain view doctrine. Because Plaintiffs state a plausible claim and additional factual development is necessary to determine whether the search and seizure was lawful, it would be premature for this Court to decide whether the automobile exception or plain view doctrine precludes Plaintiffs' claims at the motion to dismiss stage. Accordingly, Defendants' motion to dismiss on these bases is denied.

### B.   Immunity

Defendants claim they are entitled to qualified official immunity and qualified immunity for the state and federal claims against them in their individual capacities.  "[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.  Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12."  *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) (alteration in original) (internal quotation marks omitted) (internal citation omitted) (citation omitted); *see Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005) ("[C]ourts are reluctant to dismiss colorable claims which have not had the benefit of factual discovery." (citation omitted)).  Here, the validity of the state and federal defenses is not "apparent from the face of the [] Complaint . . . ."  *Dizney v. Back*, No. 6:24-CV-69-KKC, 2025 WL 1475463, at *6 (E.D. Ky. May 22, 2025) (citation omitted); *see B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 656 (W.D. Ky. 2019).  The Court therefore declines to decide immunity at this stage of litigation.

### C.   *Monell* Liability

Defendants argue that Plaintiffs' claims against Louisville Metro fail because Plaintiffs failed to sufficiently plead the claims in their complaint.[2]  A municipality "may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).  Instead, "[t]o prevail in a [Section] 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom."  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th

---

[2] Defendants also argue that Plaintiffs' *Monell* claims fail because there was no underlying constitutional violation, but, as discussed above, the Court will not decide the underlying search and seizure claims at this stage of litigation.

Cir. 2005) (citing *Monell*, 436 U.S. at 694).  To prove the existence of a municipal policy or custom, a plaintiff may point to:  (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.  *Id.*  Plaintiffs do not point to legislation or policies—in fact, they note that the "City has a policy governing Biased Law Enforcement Practices," though they claim officers ignore it. (Compl. ¶¶ 68-69).  Additionally, although Plaintiffs call Gwinn-Villaroel "the final policymaker," the complaint does not include any allegations of any specific actions she has taken.  (Compl. ¶ 157).  Instead, Plaintiffs focus on demonstrating a custom of tolerance and inadequate training and supervision.

### 1.    *Custom of Tolerance*

"A custom of tolerance claim requires that the plaintiff prove that the city had notice of a clear and persistent pattern of unlawful activity; the city tacitly approved of the unlawful activity by doing nothing; and the city's tacit approval caused the constitutional violation."  *Yatsko v. Graziolli*, 458 F. Supp. 3d 702, 716-17 (N.D. Ohio 2020) (citing *Howse v. Hodous*, 953 F.3d 402, 411 (6th Cir. 2020)), *aff'd in part, appeal dismissed in part*, No. 20-3574, 2021 WL 5772527 (6th Cir. Dec. 6, 2021).  "The regularity of the policy or custom, as adopted by its officials, must be 'so permanent and well settled' as to have 'the force of law.'"  *Ryan v. City of Detroit*, 977 F. Supp. 2d 738, 750 (E.D. Mich. 2013) (internal quotation marks omitted) (quoting *Monell*, 436 U.S. at 691).  As the Supreme Court has explained, "Congress included customs and usages [in Section 1983] because of the persistent and widespread discriminatory practices of state officials."  *Monell*, 436 U.S. at 691.

Plaintiffs allege that LMPD has a custom of "using impermissible investigatory search tactics, absent any reasonable suspicion or probable cause to believe that these individuals have committed a criminal act," and "unlawfully discriminating against African-Americans—*especially a young African-American male*—as a pretext for further investigations as a tool for officers to try and address crimes and focus on gangs and drugs in areas that are predominantly black or shifting to be predominantly black." (Compl. ¶¶ 73, 163). Plaintiffs state that Louisville Metro knows about this custom, and include numerous news stories, cases, and reports—spanning seven pages of the Complaint—detailing LMPD's disparate treatment and mistreatment of Black individuals, particularly during stops and searches, from 2016 through 2023. (Compl. 11-17). Plaintiffs further allege that Louisville Metro has acted with deliberate indifference by failing to remedy these constitutional violations. (Compl. ¶ 75). Plaintiffs assert that Pollard "was actually stopped because he was African American," and that this stop was caused by LMPD's "custom[] of disproportionately stopping and searching African-American motorist[s]." (Compl. ¶¶ 56-58).

Because Plaintiffs have alleged a pattern of the "(a) the type of conduct alleged here and (b) for the time period in question"—discrimination against Black individuals during stops and searches around 2024—inaction by Louisville Metro, and that the custom of racial discrimination caused the deprivation of their constitutional rights, they have stated a plausible *Monell* claim. *Yatsko*, 458 at 717. Therefore, Defendants are not entitled to dismissal.

## 2.    *Failure to Train and Supervise*

A *Monell* claim based on failure to train or supervise requires proof that: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually

caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citation omitted).

There are "at least two situations in which inadequate training could be found to be the result of deliberate indifference." *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003). "First, and most commonly, a plaintiff can demonstrate deliberate indifference by showing that the municipality has failed to act 'in response to repeated complaints of constitutional violations by its officers.'" *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020) (quoting *Cherrington*, 344 F.3d at 646). "Under this approach, a plaintiff must show that the defendant was aware of 'prior instances of unconstitutional conduct' such that it 'was clearly on notice that the training in this particular area was deficient and likely to cause injury' and yet 'ignored a history of abuse.'" *Id.* (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). Second, a plaintiff may demonstrate deliberate indifference by "fail[ing] to equip law enforcement officers with specific tools to handle recurring situations." *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997). As the Supreme Court has explained:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

Plaintiffs allege that LMPD officers "were not adequately trained and/or supervised in the areas of impermissible investigatory search tactics, and unreasonable use of force."[3] (Compl. ¶ 176). To support this allegation, Plaintiffs assert that "LMPD limits internal investigations" into

---

[3] Although the Complaint references "unreasonable force" and the "deprivation of Plaintiffs' civil rights and his life[,]"Plaintiffs have not alleged any facts demonstrating an unreasonable use of force or the deprivation of life. (Compl. ¶¶ 181-182).

allegations of officers' misconduct. (Compl. ¶ 182). Additionally, Plaintiffs have pleaded deliberate indifference—by pointing to a pattern of discrimination and constitutional violations, as discussed above—and causation. (Compl. ¶¶ 176, 184). Together, these allegations are sufficient to state a claim based on a failure to train or supervise.

### D.   <u>State Negligence Claim</u>

Defendants argue that Plaintiffs' Kentucky negligence claims fail because Gwinn-Villaroel is entitled to qualified immunity and cannot be held vicariously liable for the actions of the LMPD officers, and Barnes acted appropriately while conducting a search and did not breach any duty. (Defs.' Mot. Dismiss 17-19).[4] Defendants also claim that Plaintiffs have not pleaded any facts supporting a finding of gross negligence. (Defs.' Mot. Dismiss 18-19).

A negligence claim has four elements: "(1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages." *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016) (citation omitted). "[P]ublic officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those who are employed by them if they have employed persons of suitable skill." *Moores v. Fayette Cnty.*, 418 S.W.2d 412, 414 (Ky. 1967) (citations omitted); *see Franklin Cnty. v. Malone*, 957 S.W.2d 195, 199 (Ky. 1997) ("Public officials are not individually liable for the negligent actions of employees unless they ratify or participate in the tortious act." (citation omitted)), *overruled on other grounds by Com. v. Harris*, 59 S.W.3d 896 (Ky. 2001), *and Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001). Next, the Kentucky Supreme Court has defined gross negligence as "being something more than the failure to exercise slight care . . . there must be an element either of malice or willfulness or

---

[4] Again, as discussed above, the Court will not consider Gwinn-Villaroel's entitlement to qualified immunity or the appropriateness of the search at this stage.

such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or willful." *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 51-52 (Ky. 2003) (quoting *Cooper v. Barth*, 464 S.W.2d 233, 234 (Ky. 1971)).

Plaintiffs allege that Barnes and Gwinn-Villaroel breached their duty to "follow the proper law enforcement policies, procedures, and techniques, and to act as reasonable law enforcement officers would act under the same circumstances to ensure Plaintiffs'[] rights are not infringed upon,"[5] causing Plaintiffs' injuries. (Compl. ¶¶ 122, 147). Because Plaintiffs also allege that Barnes ordered the search and seizure of the vehicle, their negligence claim against Barnes is sufficient to survive a motion to dismiss. (Compl. ¶ 24). Plaintiffs, however, have not alleged that Gwinn-Villaroel was involved in the search and seizure at issue and, under Kentucky law, she may not be held liable for the negligence of Barnes or any other LMPD officers, so this claim against her fails. Plaintiffs further allege that Gwinn-Villaroel breached her duty to "exercise reasonable care in hiring, retention and supervision" of the LMPD officers. (Compl. ¶ 138). Because these allegations implicate Gwinn-Villaroel's own actions, this claim survives. Additionally, considering the alleged racial discrimination and pattern of constitutional violations, Plaintiffs have alleged sufficient facts to state a claim for gross negligence. Thus, Defendants are only entitled to dismissal of the negligence claim against Gwinn-Villaroel arising from the search and seizure itself and their other state-law negligence claims against Gwinn-Villaroel and Barnes survive.

---

[5] Defendants argue that "Plaintiffs have not identified any purported duty that Detective Barnes breached," but, clearly, Plaintiffs have identified a duty—whether that duty is *legally cognizable* is a separate question that is not adequately addressed by Defendants. (Defs.' Mot. Dismiss 18). While Defendants assert in their reply that neither Gwinn-Villaroel nor Barnes "owed a duty to Plaintiffs," they provide no citation or explanation to support that assertion. (Defs.' Reply Mot. Dismiss 11, DN 15).

E.    **State Law Conversion Claim**

Defendants argue that Plaintiffs' conversion claim fails because Board's vehicle was lawfully seized. (Defs.' Mot. Dismiss 19). As discussed above, it would be premature for the Court to determine whether the seizure was lawful at this stage of litigation. Defendants' motion to dismiss on this basis is denied.

## V.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 9) is **GRANTED IN PART** and **DENIED IN PART**, and any claim relating to the search of Board's vehicle in the impound lot and the negligence claim against Gwinn-Villaroel arising from the search and seizure itself are **DISMISSED WITHOUT PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

November 10, 2025

cc:    counsel of record

13